IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiffs, <br><br> vs. <br><br> WAKONDA HAZEL, <br><br> Defendant. | 4:17CR3004 <br><br> **FINDINGS, RECOMMENDATION, AND ORDER** |

Pending before the court is a Motion to Suppress filed by Defendant Wakonda Hazel. ([Filing No. 137](#)). Hazel seeks to suppress any and all evidence and statements obtained by law enforcement and the Government on February 1, 2017. For the following reasons, Defendant's motion should be denied.

## BACKGROUND

On October 28, 2016, a Complaint was filed in the County Court of Lancaster County, Nebraska alleging that on or between February 23, 2016 and March 7, 2016, Hazel aided and abetted the burglary of a Walgreens Store in Lincoln, Nebraska in violation of [Neb. Rev. Stat. §§ 28-206 & 28-507](#) (the "Lancaster County Complaint"). ([Filing No. 183-1](#)). On November 2, 2016, Hazel was arraigned on the charges. Yohance Christie, a Lancaster County Public Defender, was appointed to represent Hazel in the state proceedings.

On January 19, 2017, Hazel, and nine co-defendants were indicted by a federal grand jury. ([Filing No. 1](#)). The indictment alleges Hazel and her co-defendants were involved in a wide-ranging conspiracy to commit bank larceny and attempted bank larceny of ATM machines from January 2014 to April 2016, sometimes by using stolen vehicles (the "Federal Case"). The counts against

Hazel include conspiracy to commit bank larceny, in violation of [18 USC §§ 371](#) and [2113(b)](#), and one count of bank larceny or attempted bank larceny, in violation of [18 USC § 2113(b)](#).

On January 31, 2017, Hazel's state-appointed counsel was notified by William Mickle, an Assistant United States Attorney, that the federal indictment involving Hazel and her co-defendants would soon be unsealed and that Hazel would have an initial appearance in the Federal Case on February 1, 2017.

On the morning of February 1, 2017, Hazel was processed out of the Lancaster County Jail and transported to the Denney Federal Building and United States Courthouse for her arraignment in the Federal Case. While she was being processed out of the jail, Lancaster County Sheriff's Deputy Michael Hipps spoke with Hazel regarding whether she was willing to provide an interview with federal agents once at the federal building. Based on Hazel's response, Deputy Hipps telephoned FBI Special Agent Matthew Saad, informing Saad that Hazel had indicated she would provide an interview regarding her involvement in the events described in the federal indictment.

Upon her arrival at the federal building, Hazel was greeted by Saad who escorted her to the U.S. Attorney's Office to provide her interview. Saad was aware that Hazel had been charged with burglary in state court, but he was unaware of the status of the state charges. Similarly, Hazel informed Saad that she was represented by counsel in the state case, but Saad did not know whether Hazel had an appointed attorney in the Federal Case.

Before Saad began to interview Hazel, he orally advised her of her Miranda rights: She was informed of her Fifth Amendment right to remain silent

and her Sixth Amendment right to have counsel present during any interview. She was handed a Miranda waiver form, which she reviewed, initialed, and signed. The interview lasted approximately 45 minutes, during which Hazel provided a statement that included information incriminating herself and other co-defendants in the charges contained in the federal indictment. Following the interview, Hazel attended her initial appearance and arraignment before the undersigned magistrate judge. During the initial appearance, Candice Wooster was appointed as counsel for Hazel in the Federal Case. (Filing Nos. 33, 39).

The Lancaster County Complaint was dismissed by the County on February 3, 2017. (Filing No. 183-1).

Hazel filed the instant motion to suppress on June 2, 2017, alleging that the February 1, 2017 interview by Special Agent Saad violated her Fifth and Sixth Amendment rights and must be suppressed. The court held hearings concerning Hazel's motion on July 20, 2017 and August 21, 2017.

ANALYSIS

Hazel argues that the interview conducted by Special Agent Saad violated her Sixth Amendment rights. First, she argues that because she had appointed counsel in the state proceedings and had invoked her right to counsel, law enforcement impermissibly initiated an interview without her counsel present. The government concedes that law enforcement initiated the contact with Hazel on February 1, 2017, (see filing no. 210 at CM/ECF p. 24), but argues this act did not violate Hazel's Sixth Amendment right to counsel because the Federal Case charges different offenses than the state proceedings, and at the time of the interview, Hazel had not yet invoked her Sixth Amendment right to counsel in the Federal Case.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for [her] defense." U.S. CONST. amend. VI. A defendant has the right to have counsel present at all critical stages of criminal proceedings when such proceedings are initiated. Montejo v. Louisiana, 556 U.S. 778, 786 (2009). Once a defendant invokes her right to counsel, any ongoing interrogation must end. See Minnick v. Mississippi, 498 U.S. 146, 150 (1990) (citing to Miranda v. Arizona, 384 U.S. 436 (1966)). Subsequent interrogation or law enforcement contact may only occur when counsel is present or when the defendant herself initiates further communication, exchanges, or conversations. Minnick, 498 U.S. at 150–51 (citing Edwards v. Arizona, 451 U.S. 477 (1981)).

But the Sixth Amendment right to counsel is "offense specific," and "cannot be invoked once for all future prosecutions[.]" McNeil v. Wisconsin, 501 U.S. 171, 175 (1991). For Sixth Amendment purposes, whether two indictments or offenses qualify as the same offense is determined by the test applied to double-jeopardy challenges as stated in Blockburger v. United States. Texas v. Cobb, 532 U.S. 162 (2001) (citing 284 U.S. 299 (1932)). The Blockburger test holds that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger, 284 U.S. at 304.[1] Thus, when the offenses would not be the

---

[1] The court also questions whether the facts of the Lancaster County Case and Federal Case truly encompass the "same act or transaction." The Lancaster County Case concerned the burglary of a Walgreens in Lincoln, Nebraska in early March of 2016. (See Filing No. 183-1). The Federal Case arises from several robberies committed from January 2014 to April 2016, with the indictment listing four specific robberies, none of which include the March 2016 Walgreens robbery. (Filing No. 1). In fact, the federal court does not have jurisdiction over the Walgreens robbery because the money stolen were not insured by the FDIC. (See Filing No. 214). Regardless, even

4

same under the Blockburger test, the Sixth Amendment right to counsel begins anew and the defendant must invoke his or her right to counsel for the new offense or charge. See United States v. Johnson, 352 F.3d 339 (8th Cir. 2003) (stating where charges contained within two separate indictments were not the same offense under the Blockburger test, the defendant's right to counsel in the first indictment did not pass to the second).

The first step under the Blockburger test is to identify the relevant statutory elements. United States v. Bennett, 44. F.3d 1364, 1374 (8th Cir. 1995); see also United States v. Smith, 8:12cr252, 2013 WL 1386638 *5–6 (D. Neb. April 4, 2013)("The Blockburger test focuses on the statutory elements of each offense, rather than the underlying conduct."). Here, the Lancaster County Complaint alleged violations of two Nebraska statutes for Hazel's alleged participation in the burglary of a Walgreens: Aiding and Abetting (Neb. Rev. Stat. § 28-206); and Burglary (Neb. Rev. Stat. § 28-507). (Filing No. 183-1). To prove these charges the government must show 1) Hazel intentionally encouraged another to "willfully, maliciously, and forcibly break[] and enter[]" the Walgreens with the intent to "commit a felony" or with the intent to "steal property of any value[;]" 2) Hazel knew that the other "intended to commit" the Walgreen's burglary; and 3) the burglary was in fact committed. See State v. Johnson, 236 Neb. 831, 842 (1991)(listing the elements for the crime of aiding and abetting); Neb. Rev. Stat. § 28-507.[2]

---

in applying the Blockburger test, the court finds the state and federal counts encompass separate offenses.

[2] Under Nebraska law, the government need only prove the elements of aiding and abetting to convict Hazel of the principal crime. According to the facts in Lancaster County Complaint, Hazel acted by aiding and abetting the burglary and the complaint contained the additional charge of burglary in accordance with this rule.

5

The federal indictment provides two counts against Hazel; one count for conspiracy to commit bank larceny/attempted bank larceny in violation of Title 18 USC § 371, and one count of bank larceny involving the November 23, 2015 robbery of the First State Bank in Waverly, Nebraska in violation of Title 18 USC § 2113(b). (Filing No. 1).

To prove the conspiracy count, the government must prove that beginning about January 1, 2014 and continuing through about April 30, 2016, Hazel voluntarily and intentionally entered into an agreement or understanding with one or more other persons to take and carry away with intent to steal property, money, or items belonging to or in the care, custody, control or management and possession of a bank or credit union which was insured by the Federal Deposit Insurance Corporation ("FDIC") or National Credit Union Administration ("NCAU"). The government must show Hazel joined the agreement/understanding knowing its purpose and while the agreement/understanding was in effect, one person or more who joined the agreement knowingly committed one or more of the overt acts alleged in the Indictment for the purpose of carrying out the agreement. 18 USC §§ 371 & 2113(b); see also United States v. Benedict, No. 13CR150(1), 2014 WL 272317, **2-3 (D. Minn. Jan. 24, 2014).

To prove the federal burglary/burglary attempt count against Hazel, the government must prove that on November 23, 2015, Hazel or another involved in the conspiracy, took and carried away, or attempted to carry away, with intent to steal property, money, or items valued in excess of $1,000 which belonged to or were in the care, custody, control or management and possession the First State Bank in Waverly, Nebraska. The government must also prove the property or

6

money was insured by the FDIC. § 2113(b); see also Benedict, 2014 WL 272317 at **2-3.

Based on a clear reading of these statutes and their elements, the court finds that there are numerous differences between the charges contained in the Lancaster County Complaint and federal indictment. In fact, it is well established for double jeopardy purposes that a conspiracy is not considered the same offense as aiding and abetting because aiding and abetting, "although often based on agreement, does not require proof of that fact[.]" Iannelli v. United States, 420 U.S. 770, 776 n.10 (1975)(citing Pereira v. United States, 347 U.S. 1, 11 (1954)); see also United States v. Pullman, 187 F3d 816, 820 (1999)("The agreement is the essential evil at which the crime of conspiracy is directed, and it serves to distinguish conspiracy from aiding and abetting[.]"); United States Thomas, 971 F.2d 147, 149 (1992)(applying Supreme Court and Eighth Circuit precedent to conclude that counts of aiding and abetting and conspiracy are not the same offense under the Blockburger test). Additionally, under the Blockburger test, a conspiracy is not considered the same offense as the underlying substantive charge. United States v. Halls, 40 F.3d 275, 277 (8th Cir. 1994) (holding "the agreement to do the act is distinctive from the act itself."); see also Bennett, 44 F.3d at 1375 ("it is axiomatic that a substantive offense is distinct from a conspiracy to commit that or another substantive offense.").

The state and federal cases against Hazel do not charge the same offenses under the Blockburger test. Accordingly, for Sixth Amendment purposes, Hazel had not effectively invoked her right to counsel in the Federal Case prior to being approached by Deputy Hipps on February 1 to determine whether she would be willing to provide an interview. The court therefore finds Hazel's Sixth Amendment rights were not violated at that time.

Hazel argues that even if her invocation of counsel in the Lancaster County Case was not effective in the Federal Case, she had already been appointed counsel in the Federal Case when the February 1, 2017 interview was conducted, and she was therefore entitled to have that counsel present. According to the record, Hazel was not appointed counsel in the Federal Case until her February 1, 2017 initial appearance—which occurred after the interview, (see Filing Nos. 33, 39): As of the time of her interview, Hazel had not clearly invoked her Sixth Amendment right to counsel in the Federal Case. Although the court recognizes that a post-indictment interrogation is considered a critical stage at which a defendant has a right to counsel, a defendant may waive her Sixth Amendment rights as long as the waiver is intelligent, knowing, and voluntary.[3] Montejo, 555 U.S. at 786; Patterson v. Illinois, 487 U.S. 285, 292, n.4 (1988); Brewer v. Williams, 430 U.S. 387, 404 (1977). She may do so "whether or not [she] is already represented by counsel; the decision to waive the presence of counsel "need not itself be counseled." Montejo, 556 U.S. at 786; Michigan v. Harvey, 494 U.S. 344, 352-53 (1990). A Miranda advisory will typically suffice, even though Miranda rights are rooted in the Fifth Amendment. Montejo, 555 U.S. at 786. And the appointment of counsel does not give rise to a presumption that a subsequent waiver of the right to counsel is invalid. Id. at 789.

Finally, Hazel argues any waiver of her Sixth and Fifth Amendment rights before or during the February 1, 2017 interview was a result of a deceptive and coercive statements by Deputy Hipps and Special Agent Saad and was not made knowingly, voluntarily, or intelligently.

---

[3] Hazel does not argue, nor does the testimony or evidence show, that she invoked her right to counsel in the Federal Case before or during her interrogation by Saad on February 1, 2017.

8

The government bears the burden of proving by a preponderance of the evidence that Defendant's waiver of Miranda rights was an intentional, voluntary, knowing, and intelligent relinquishment or abandonment of a known right or privilege. U.S. v. Black Bear, 422 F.3d 658 (8th Cir. 2005). A waiver is "knowing and intelligent" if it is made with full awareness of both the nature of the right being abandoned and the consequences of abandoning the right. A waiver is "voluntary" if it was a product of the suspect's free and deliberate choice, and not the product of intimidation, coercion, or deception. Thai v. Mapes, 412 F.3d 970, 977 (8th Cir. 2005). The test for voluntariness is whether, "in light of the totality of circumstances, pressures exerted upon the suspect have overborn [her] will." United States v. Jorgensen, 871 F.2d 725, 729 (1989)(quoting Haynes v. Washington, 373 U.S. 503, 513–14 (1963)). Factors the court should examine include the details of the interrogation, including the tactics used by the officer, and the characteristics of the defendant. United States v. Wilson, 787 F.2d 375, 381 (8th Cir. 1986). Specifically, the court should consider the suspect's age, general intelligence and education; whether she was intoxicated or under the influence of drugs when consenting; whether she consented after being informed of her Miranda rights and her right to withhold consent; and whether, because she was previously arrested, the defendant was aware of the protections afforded to suspected criminals by the legal system. United States v. Griffith, 533 F.3d 979, 984 (8th Cir. 2008).

Hazel cites several reasons supporting her claim that her Miranda waiver was not voluntary. She claims that before being transported to the federal building on February 1, 2017, Deputy Hipps advised Hazel that it would be best for her if she talked to a federal agent, implying that her cooperation would secure an earlier release. At that time, Hazel had been in custody on the

Lancaster County charges since October of 2016, and she was eager to be released to assist her daughter with the birth of her grandchild.

On February 1, 2017, before Hazel was transported to the Federal Building for her initial appearance, Deputy Hipps spoke with Hazel while she was being processed out of the Lancaster County Jail to see whether she would speak with the federal agent. At the August 21, 2017 hearing, Hazel testified that when Deputy Hipps asked her whether she would be willing to speak with federal agents, she understood she was facing a federal indictment and she knew the possible penalties for the charges included prison time. ([Filing No. 214](#)). According to Hazel's testimony, Deputy Hipps told her that none of her co-defendants had yet spoken with law enforcement so it would be in her best interest to be the first to speak if she wanted to get home to her grandchild. ([Filing No. 214](#) at 39:50–40:15). In contrast, Deputy Hipps testified that he informed Hazel that to his knowledge, other co-defendants had been interviewed by law enforcement. ([Id.](#) at 20:20–20:40). He also testified that he never told Hazel that it would be in her best interest to speak with the federal agent, but merely asked whether she would be willing to do so. ([Id.](#) at 20:50–22:10).

Regardless of the contradiction, Hazel testified that she responded "okay" to Hipp's suggestion that she could speak with a federal agent, explaining she was still undecided on whether to do so. ([Filing No. 214](#) at 39:50–40:52). So even assuming Hipps tried to convince or deceive Hazel into believing it was in her best interest to speak with federal agents, according to Hazel's own testimony, Hipp's alleged suggestions/promises were not so powerful as to prompt Hazel's immediate cooperation without first thinking over her options: Hazel understood and maintained her power to choose whether to cooperate, indicating her will was not overborne.

Special Agent Saad made no deceptive statements, promises, or threats to persuade Hazel to waive her Miranda rights and provide a statement, and he did not tell Hazel that co-defendants were talking to law enforcement.[4] Once Hazel was in the Federal Building, Saad, who was dressed in street clothes, escorted Hazel to a conference room in the U.S. Attorney's office. Assistant U.S. Attorney William Mickle and Saad were present for the interview. Before the interview began, Hazel's handcuffs were removed and she was offered water. Saad introduced himself as an FBI agent and then read Hazel each of her rights from the Miranda form. Hazel, an adult woman, had direct prior knowledge of these rights: She had previously been arrested and detained for the Lancaster County case and had been appointed an attorney in that case. Hazel appeared to understand her rights as Saad read them, and she did not ask any questions. She initialed each right and signed at the bottom of the form, confirming that she waived her Miranda rights. (Gov. Exh. 8). During the 45-minute interview Hazel appeared to understand the questions being asked, did not appear to be under the influence of drugs or alcohol, and never asked to stop the interview or to have an attorney present.

Upon consideration of the evidence, the court finds that Hazel's waiver of her Miranda rights, including her right to counsel before being interviewed, was voluntary and not the result of an overborne will. Accordingly,

---

[4] Within her brief in support, Hazel claims Special Agent Saad informed Hazel her release would be prolonged if she refused to answer questions until an attorney was present. (Filing No. 187 at CM/ECF p. 4). Saad denied these claims during his July 20, 2017 testimony. Hazel did not further argue or address these allegations in her second brief in support, (see Filing No. 199), or when she provided testimony during the August 21, 2017 hearing.

IT IS RECOMMENDED to the Honorable John M. Gerrard, United States District Judge, pursuant to [28 U.S.C. § 636](b), that the motion to suppress filed by Defendants Hazel ([Filing No. 137](#)) be denied in its entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that the jury trial of this case is set to commence before John M. Gerrard, United States District Judge, in Courtroom 1, United States Courthouse, Lincoln, Nebraska, at 9:00 a.m. on October 16, 2017 or as soon thereafter as the case may be called, for a duration of ten (10) trial days. Jury selection will be held at the commencement of trial.

Dated this 31st day of August, 2017.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge